Den ex dem. Richman and al. v. Baldwin.

DEN EX DEM. RICHMAN & AL. v. BALDWIN.

1. Where a person seised in fee of premises by mistake supposes that he is seised as tenant in common with others, applies to the Orphans' Court so stating in his petition, and on his application a partition is had, he may yet recover a share set off by such proceedings from a person who bona fide purchased it of one of the alleged tenants in common.

2. The proceedings in the Orphans' Court on partition do not operate as a technical estoppel to bar petitioner from denying the *title* of the alleged tenants in common. Such proceedings merely operate to separate possession, and do not relate to title.

3. Such application and partition will not operate as an equitable estoppel in a *court of law* to debar the petitioner or his heirs from recovering from the purchaser in ejectment. The remedy, if any, is in Equity. *Quere?* Whether in a court of law *estoppels in pais* (a) will ever affect title to real estate?

4. An estoppel *in pais* never arises except where there is actual or legal fraud.

5. A parol license may justify a trespass, and may be irrevocable, but it cannot convey title, and therefore can be no defence in ejectment.

6. *Acquiescence,* by the owner of land permitting another to build and improve without objecting, has been held to settle the *location* of a boundary, but cannot give title.

(a) *Jackson* v. *Smith,* 12 *Wend.* 57 ; *Kip* v. *Norton, Id.* 130 ; *Rockwell* v. *Adams,* 6 *Wend.* 467 ; *Adams* v. *Rockwell,* 16 *Id.* 285 ; *Sawyer* v. *Fellows,* 6 *N. H.* 107 ; *Singleton* v. *Whiteside,* 5 *Yeager* 18, are authorities to show that estoppels by matters in pais may affect real estate. Contra *Pond* v. *Pond,* 14 *Mass.* 403 ; *Whitney* v. *Holmes,* 15 *Id.* 152 ; *Parker* v. *Barker,* 2 *Met.* 423 ; *Rail Road Co.* v. *Sparhawk,* 5 *Id.* 469 ; *Brewster* v. *Rail Road Co. Id.* 479 ; *Leland* v. *Gasset,* 17 *Venn.* 403. Also, later cases in New York, *Swick* v. *Sears,* 1 *Hill* 17 ; *Delaplaine* v. *Hitchcock,* 6 *Hill* 14.

This was an ejectment brought in the Circuit Court of the County of Salem, to recover possession of forty-three acres of land in the township of Pittsgrove, in that county, in the tenure of the defendant. The following is the substance of a case agreed upon and certified to this Court for its advisory opinion :

Henry Richman deceased by his last will, dated 6th January, 1779, proved 15th September, 1787, devised as follows, viz : " I give unto my son, Henry Richman, the plantation I now live on," &c., (describing it.) " I give it to my son Henry during his natural life, and then to the heirs of his body lawfully begotten forever."

Henry Richman, the devisee, entered into possession, and then by deed 5th January, 1796, conveyed the premises so devised to him to one Thomas Parvin.

Henry Richman, (2nd) died about 1825, leaving four children, *Jeremiah,* (the eldest son,) *Benjamin C., Constantia* and *Charlotte,* who upon his death brought suit to recover the premises so conveyed to Parvin. The heirs of Parvin relinquished the premises, and on 14th Jan. 1826, before the day to which the ejectment was returnable, made and executed to Jeremiah Richman, (the eldest son, and father of the lessors of the plaintiff,) an absolute release and quitclaim of the land so conveyed to their father Thomas Parvin.

At September term 1826, the said Jeremiah Richman applied to the Orphans' Court of the County of Salem for a division of the lands devised by his grand father Henry Richman, among the heirs at law of his father Henry Richman, (2nd.) The petition presented by him to the Orphans' Court recited that the " petitioner together with *Benjamin, Constantia,* and *Charlotte Richman,* are heirs of Henry Richman, late of the County of Salem, deceased, who devised certain real estate in the township of Pittsgrove to the said heirs, (after the decease of their father Henry Richman, jr.) by his last will and testament, which they now hold undivided and as tenants in common," &c. · He therefore prayed the court to appoint Commissioners " to assign and set off to each one of said heirs, their shares by metes and bounds agreeably to the will of said deceased." The court, upon this petition, appointed Commissioners to make such par-

tition, who divided the premises accordingly and made their report thereof, which was confirmed at December term 1826. The said children of Henry C. Richman took possession of the shares so severally allotted to them, and Benjamin Richman on 5th January, 1836, conveyed his share by deed to John Baldwin, who is in possession of the same.

Jeremiah Richman died May, 1845, intestate, not having sold or otherwise made any disposition of the premises devised by the will of his grand father, leaving the lessors of the plaintiff his children and heirs at law.

The defendant confessed lease, entry, ouster and possession.

Argued before the CHIEF JUSTICE, and NEVIUS and CARPENTER, JJ.

*Vroom,* for Plaintiff.

*W. Halsted,* for defendant.

NEVIUS, J. The lessors of the plaintiff are the heirs at law of Jeremiah Richman, who on the death of his father Henry Richman the second, in 1825, became seised in fee simple of a tract of 165 acres, of which the premises in question are a part. These lands, by the will of Henry Richman the first, made in 1779, were devised to his son Henry the 2nd, in tail, and on his death descended to his eldest son Jeremiah, in fee simple under our statute. Henry the 2nd died in 1825, leaving four children, of whom Jeremiah was the eldest, who on the death of his father, filed his petition to the Orphans' Court of the county of Salem, alleging a joint interest in himself, his brother and two sisters, in these lands, as heirs at law of Henry Richman, their father, representing himself and them to be tenants in common under the will of their grandfather, and asking that the same might be divided among them agreeably to that will. Upon this petition commissioners were appointed, who made partition accordingly, and the lands were allotted among them, each taking possession of his and her allotment. The defendant came into possession of one of these shares, containing 43 acres by pur-

chase, and has made improvements upon it with the knowledge of Jeremiah, and without objections on his part. Jeremiah died in 1845, and his heirs now bring this suit to recover these lands.

The question for the decision of this court is, whether the lessors of the plaintiff are estopped by the record of the proceedings in the Orphans' Court? or whether such proceedings and subsequent acquiescence of Jeremiah constitute an estoppel in pais, or an equitable estoppel?

And 1st, are the lessors estopped by the record? I think not. The Orphans' Court had no jurisdiction in the case—their authority to make partition under the act of 1820, *Rev. Laws* 780, § 12, extended only to cases where all the parties had an interest in the lands to be divided, either as tenants in common or joint tenants, and in that case their power was limited only to the severance of the possession, and they could not convey or award a title. Here there was no such common interest or joint possession, the whole title and possession was in Jeremiah, the eldest son, and his request or petition to the Orphans' Court could not confer a jurisdiction where the law had conferred none. The partition as an act of the court was a mere nullity. The proceedings therefore in that court do not amount to an estoppel by record. A record to be conclusive and operate as an estoppel, must show upon its face that the matter in issue in the case where it is set up as an estoppel, was involved in the proceedings which constitute such record. The question in issue in this case is title to the lands in question. That question was in no wise involved before the Orphans' Court: the legal title of no party was affected by the partition.

It remains to inquire whether the admissions, express or implied, made by the ancestor of these lessors on his application for such partition, or his subsequent acquiescence in such partition for 19 years, and his standing by and seeing improvements made upon the different allotments without objection, will bar their action or constitute an estoppel in pais. It is manifest that the whole proceedings in the Orphans' Court was founded in a mistake on the part of Jeremiah Richman, and his counsel and the court. In his petition, whilst he alleges that he and his brother and sisters have a joint interest in the lands, he pro-

Den ex dem. Richman and al. v. Baldwin.

ceeds to say they were tenants in common under the will of their grandfather, and asks partition to be made according to that will. Now they were not tenants in common under that will, nor was any partition to be made according to that will. This petition contains no admission of title in the heirs general of Henry Richman the 2nd, unless there is such titles under the will of Henry Richman the 1st, to which the petition directly refers, and as that will vests no such title in these heirs, it follows that there is no admission of title in them at all. But it is insisted that Jeremiah barred himself, and of course his heirs, from a recovery of these lands, by suffering or causing the partition and allotment to be made, and silently acquiescing in improvements made by the other tenants. If there was any thing in the case to warrant the presumption of fraud on his part, this defence might prevail in a court of law. But there is no ground for such presumption. There is no act or omission shewn which the court can infer was designed to effectuate a fraud, and consequently there is no act done by him to divest him of the legal estate in these lands. But it is said there was a mistake on the part of Jeremiah, which operates injuriously upon the defendant, who is a purchaser, and the rule of law is that where one of two innocent parties must suffer a loss, it must fall upon him who has occasioned it. The answer to this is: 1st, the purchaser had equal means of investigating his title, and ascertaining its validity with Jeremiah himself, and if he was misled in the same way and by the same means, he stands in no better situation than the lessors of the plaintiff, and in that case the legal title must prevail. And 2d, if the original mistake of Jeremiah in causing this partition to be made, and his acquiescing in that partition for 19 years, were the means of the defendant making this purchase, a court of law has not the power to divest him or his heirs of their legal title for that cause. The defendant, if he has a remedy, must resort to a court of equity which has jurisdiction in such cases, and where full justice may be done.

The case of *Den* v. *Longstreet*, 3 *Har.* 405, is in my opinion a much stronger case than the present, yet the majority of the court refused to declare, where there had been a parol par-

tition of lands between tenants in common, and possession taken by each of his several parts with the consent of the others, and large expenditures incurred in improvements by one on his separate share, and that too with the knowledge of the other, that the other was not barred by these circumstances.

I think that judgment in this case ought to be rendered for the plaintiff.

CARPENTER, J.   The devise to Henry Richman is beyond all controversy a devise in fee tail.   It is plainly within the rule in *Shelley's* case, which rule has been recognized as well settled in this State in regard to wills prior to the act of 1820, by which it was abolished.   1 *South.* 303; 1 *Pen. R.* 291; 3 *Green, Ch. R.* 495, 498.   Henry Richman, the devisee, therefore became seised of an estate in fee tail, which on his death descended to his eldest son Jeremiah Richman, in whom by the operation of the statute of 1784, (*Pat.* 54, 78) it became a fee simple. The instant the first descent was cast, that instant the first estate was enlarged to a fee simple.   When therefore Henry Richman, the devisee, died about the year 1825, leaving four children, his estate in the premises devised did not, as seems to have been then supposed, descend to or vest in those children, excepting his eldest son Jeremiah, who took it by descent and became the owner in fee simple.   *Den* v. *Fogg*, 2 *Pen.* 819; *Den* v. *Fox*, 5 *Halst.* 40; *Den* v. *Spachins*, 1 *Har. R.* 172.   Under a mistaken notion, suits were commenced in the name of all the children of Henry Richman (2nd) against those who held under the alienee of their father; but they relinquished by a release to the eldest son in whom the title was vested.   It is somewhat remarkable that this eldest son even then does not seem to have discovered the error, for he applied to the Orphans' Court, representing himself, his brother and two sisters as tenants in common and owners under the will of his grandfather, and asked for the appointment of commissioners to divide the property between them.   The property held under this devise was in consequence divided; the shares were taken possession of by those to whom they were respectively allotted, fenced and improved, and are still held by them with the exception of one share conveyed to the defendant.

It was argued on behalf of the defendant, that Jeremiah Richman and those claiming under him were estopped by the proceedings in the Orphans' Court on his application for partition.

The common law writ of partition is still in force in this state. Although now seldom, if ever, resorted to, yet it may be used and still stands upon the same principles, and is regulated by the same practice as in the English law. The statutes of 31 *Hen.* 8 *c.* 1 ; 32 *Hen.* 8 *c.* 32, and 8 & 9 *W.* 3 *c.* 31, the latter regulating the practice upon writs of partition have been in substance re-enacted in this state. *Act* of 1797, *Rev. L.* 299 ; *Rev. Stat.* 109. There may be some ground for the position that partition by writ is a technical estoppel as between parties and privies. On this process the demandant must prove his title as he has declared upon it, unless admitted upon the pleadings ; and the declaration must set out the title, and shew upon what right he demands partition. It is necessary to set out even the title of defendants, though in regard to tenants in common, it is said, the demandant may not be conusant of the tenant's title which is several, and his title therefore in such case need not be specifically set forth. *Yates* v. *Windham, Cro. Eliz.* 64 ; *Moor* v. *Onslow, Cro. Eliz.* 759 ; *Halton* v. *Earl of Thanet,* 2 *W. B.* 1134 ; *Agar* v. *Fairfax,* 17 *Ves.* 552 ; 4 *Bac.* 510, " Joint-tenants " (*I.*) Indeed the necessity of proving title and the consequent technical difficulties had almost caused the disuse of this common law process in England before its abolition by statute ; the concurrent jurisdiction assumed in the Court of Chancery being preferred in consequence of its freedom from technical restraint. Possibly then a judgment on partition by writ, may conclude parties in regard to title, to the extent to which in that action, title becomes the subject of inquiry and decision, though it is unnecessary for us to settle this question in the present case. See *Co. Lit.* 352 *a* ; *Ib.* 172 *b* ; *Hargrave's* note to the passage last referred to, and mss. annotation cited ; *Ewing, C. J.* 1 *Green,* 277, 278 ; *Allnatt on Partition,* 147, (*Law Lib.*)

But whatever may be the effect of partition by writ, the principle of a technical estoppel can scarcely be applied to the proceeding by petition under our statute, which operates only on the possession. It is not *inter partes,* after due process and ap-

pearance, as in the common law proceeding upon writ; but *ex parte* upon mere petition to the court or the judge, as the case may be. When two or more persons hold real estate as co-parceners, joint-tenants, or tenants in common, any one being a minor, the Orphans' Court, upon the mere application of one of such persons so holding, is authorised to appoint commissioners to make partition. *Rev. L.* 779 ; *Rev. Stat.* 105. The statute indeed says the division so made shall be conclusive to all parties concerned, but the proceedings are merely to separate the possession, and do not relate to title. No inquiry into title is necessary, as in the case of partition by writ; nor indeed can title be inquired into. (a) All that the court needs to know is that they, among whom partition is to be made, are tenants in common, &c., whether for life, in fee, or in tail, is immaterial, and holding a present estate in possession ; if so, they are entitled to call for a partition, and each to have possession of his share in severalty. Operating only on possession, and involving no inquiry into title, such partition can be therefore no technical estoppel.

But if no technical estoppel, it has been urged that there may be an equitable estoppel to the petitioner and those claiming under him. That Jeremiah Richman, under whom the lessors claim, applied to the Orphans' Court for a division of the lands devised by his grandfather, and which then had descended to him as the heir in tail. That in this petition he represented to the court that this real estate was held by him, his brother and sisters as tenants in common, by virtue of a devise from their grandfather, and asked that it might therefore be divided among them agreeably to the will of the said testator. That it was divided according to his own request, and one share, the premises in controversy, upon the faith of their proceedings, purchased by the defendant. It is asked would it not be a legal fraud in Jeremiah Richman, and in those claiming under him, to disturb a title in the hands of a *bona fide* purchaser, founded on his own representations ?

A technical estoppel sometimes concludes the party without

---

(a) See *Van Riper* v. *Berdan*, 2 *Green*, 132.

reference to the moral qualities of his conduct; it is otherwise however as to an estoppel in pais, which rests on the ground of fraud : fraud it may be, not in the intention of the party, but in the effect of his conduct. This equitable estoppel rests upon the principle that when any one has done an act, or made a statement, which it would be fraud on his part to controvert or impair, and such act or statement has so influenced any one that it has been acted upon, the party making it will be estopped, and cut off from the power of retraction. It must appear, first, that he has done some act or made some admission, inconsistent with his claim; secondly, that the other party has acted upon such conduct or admission; and thirdly, that such party will be injured by allowing such conduct or admission to be withdrawn. It is intended that the acts and admissions of a party should operate against him in the nature of an estoppel, when in good conscience and honest dealing, he ought not to be permitted to gainsay them. *Pickard* v. *Sears*, 6 *Adol. & Ellis*, 469; Bayley, J. in *Heane* v. *Rogers*, 9 *B. & C.* 577; *Dezell* v. *Odell*, 3 *Hill* 216; 2 *Smith L. C. by Hare & Wallace* 467. (*Edition* 1844.)

The doctrine of equitable estoppel as will appear by the cases cited has been adopted and applied in courts of law in regard to personal property, in which cases usually no technical formalities intervene to prevent its application. But though a purchaser of real estate, who has been misled by the real owner, has been protected in a court of equity, it is by no means clear, that in such case, he can receive the same aid in a court of law. It has been frequently held that when the owner sanctions a purchase from a third person and suffers one to purchase and expend money under an erroneous opinion without making known his claim, that he shall not be permitted to exercise his legal right against such person. A Court of Chancery has barred him in such case from enforcing his claim and it has been the constant practice to resort to that court for redress; a practice which would be unnecessary if the same aid could be given in a court of law. We have come to the conclusion that the redress of the defendant in the present instance, must be sought in that court, and that we can not now aid him, in a court of law.

The doctrine sought to be established derives no aid from the numerous cases under the head of license. A dispensation or license properly passes no interest nor alters or transfers property in anything, but only makes an action lawful which without it would have been unlawful. It is technically speaking an authority to do some act, or series of acts, on the land of another, without passing any estate in the land ; though what is called a license is often something more than a license and comprises or is connected with a grant ; *Cook* v. *Stearns*, 11 *Mass.* 537 ; *Thomas* v. *Sorrell*, *Vaughn* 351 ; *Wood* v. *Leadbitter*, 13 *M. & W.* 838, 844.

When an act is done with the express or implied sanction of the owner of real estate, it shall not be treated as a tort nor made the foundation of a recovery in damages ; such license will be a justification in trespass for any act done under it while unrevoked. But it seems now well settled upon principle that in order to confer any permanent right or interest on the land of another an instrument under seal is essential, and that a parol license to go and remain for a certain time on such person's land, though for a valuable consideration, unless coupled with an interest, is revocable at the will of the licenser. *Wood* v. *Leadbitter, Supra ; Cook* v. *Stearns, Supra ; Prince* v. *Case*, 10 *Conn.* 375 ; *Miller* v. *The Auburn & Syracuse R. R. Co.* 6 *Hill* 61 ; and 2 *Am. Lead. Cases*, 514, *et seq.* where the whole doctrine of licenses revocable and irrevocable, executory and executed, is ably treated in the learned annotation of Mr. Hare.

A license, express or implied, tacit or otherwise, may lead to the expenditure of money, either on the land of the third person or elsewhere, in a manner which will be rendered altogether fruitless by the withdrawal or revocation of the license, and this gives rise to a question very analogous to that before the court. Lord Mansfield is reported to have said, if a man lets another build on his land it shall be pronounced a gift, but the doctrine cannot be supported, and has never been sanctioned. In *Watts* v. *Hawkins*, 7 *Taunt.* 23, where the dictum is referred to, it was held that a building ensues the nature of the tenure of the land on which erected, and that there must be a conveyance to pass the property of the soil. It is true the license may be irrevo-

cable so far as is necessary to the enjoyment of the grant, and if capable of being made by parol, may be a justification in trespass for any acts done under its authority, as in *Wood* v. *Manly*, 11 *Adol. & Ellis*, 34 ; *Nettleton* v. *Sikes*, 8 *Metc.* 34. Still, it is only a defence for acts of a temporary nature, and not a means by which an interest is given in the land itself. See 2 *Am. Lead. Cas.* 518, 528, &c.

But the present case is in ejectment, where the defence must be that the title has passed to the defendant, and the statute of frauds forbids that it should pass by parol. Title, legal title, as understood in a court of law, cannot pass merely because the defendant, in consequence of the mistaken act of Jeremiah Richman, supposed he had procured such title. A conveyance is necessary in a court of law, and to hold that in such court the lessor of the plaintiff, by an equitable estoppel, is debarred from setting up his title, would in effect nullify the statute. The remedy, if any, is in equity, where the practice is in such case to resort for redress. *Smick* v. *Sears*, 1 *Hill* 17 ; *Delaplaine* v. *Hitchcock*, 6 *Ib.* 14.

There is here no analogy to those cases where the defendant in ejectment entered into possession under an agreement to purchase, or being in possession, was permitted to hold under such agreement. In such case the possession must be surrendered before the title of the lessor of the plaintiff can be disputed. Such was the case of *Tindall* v. *Den d. Conover*, decided in the Court of Errors, October Term, 1846. So also *Jackson* v. *Smith*, 12 *Wend.* 57.

Neither is the present case affected by those decisions which have been cited as to the effect of *acquiescence* in the location of boundary lines between adjoining tracts, which passes no title but simply fixes the location. See *Kip* v. *Norton*, 12 *Wend.* 130 ; *Rockwell* v. *Adams*, 6 *Ib.* 467.

We are all of the opinion that the Circuit Court must be advised to give judgment for the plaintiff.

The Chief Justice concurred.

CITED *in Phillipsburgh B'k* v. *Fulmer*, 2 *Vr.* 55 ; *Cobb* v. *Davenport*, 3 *Vr.* 393 ; *N. J. Midland R. W. Co.* v. *Vansyckle*, 8 *Vr.* 501 ; *Martin* v. *Righter*, 2 *Stock.* 526–531 ; *Bush* v. *Cushman*, 12 *C. E. Gr.* 134.