ARTHUR E. BERRY, guardian,

v.

LEWIS C. POTTER et al.

Where a father says to his daughter and son-in-law that he is about to make a will, disposing of his property amongst his children, and that if she will make selections of such portions as she desires, he will give and bequeath those portions to her, and that she and her husband may enter into the possession and enjoy the full benefit and control thereof, subject only to their paying the taxes and to his collecting the rents for tenement-houses on the premises, and they signify their acceptance of such offer and enter into the possession, and the father makes his last will, devising the property so selected by the daughter to her, the relation of landlord and tenant is not thereby created; nor does any interest in or title to the lands pass under the statute of frauds and perjuries during the lifetime of the father. In such case the right created or given is a mere license to enter into the possession, which continues during the will or pleasure of the licensor or donor, and is terminated by his insanity or death, or by conveyance or demise.

On final hearing on pleadings and proofs.

*Mr. Ephraim Cutter*, for the complainant.

*Mr. Alan H. Strong*, for the defendants.

BIRD, V. C.

In 1886 Samuel Dally, being then about seventy-four years old and being the owner of several tracts of land, and about to make his will, disposing of his estate amongst his children, said to his daughter Anna and her husband, Lewis C. Potter, that as he was about to make such disposition of his property, he was willing that she should select such portions of his real estate as she desired, and in effect said that if she would do so she and her husband might at once take possession of it and occupy it as her own. Such selection was made. The parcels taken were three, one of which was a valuable clay bank. Mr. Dally made his will accordingly. The daughter with her husband and a

number of children took possession of the parcels which they had selected, with the full knowledge, consent and approbation of her father, with the distinct understanding that the father should have the rent of the houses on the premises and the daughter should pay all taxes. Mr. Potter commenced working the clay bank at once and continued to work it from that time until the filing of the bill in this suit. On the 29th of November, 1892, the complainant, Arthur E. Berry, was appointed guardian of the person and estate of the said Samuel Dally, the latter having previously been declared a lunatic upon a commission issued out of this court. Immediately after the appointment Berry notified Potter thereof. And afterwards, in March, he gave written notice and claimed possession and required Potter to surrender the possession to him as guardian. Potter refusing to surrender the possession, Dally presented his bill and asked for an injunction, restraining Potter from working the clay bank and disposing of the clay and sand, and that he may be required to account for a reasonable share of the profits of the said clay bank.

Mr. and Mrs. Potter resist the prayers, upon the ground that they took the possession of said premises in compliance with a family settlement and arrangement entered into between them and Mr. Dally, and that for at least six years they had the possession of said premises with the full knowledge and approbation of Mr. Dally and in accordance with such arrangement. It is also claimed that they expended large sums of money in digging trenches and laying pipe to drain the water from these banks so that they could be worked more advantageously.

There was nothing expressed in writing except the making of the will by Mr. Dally. Whatever rights of a legal or equitable nature of which the defendants can claim the benefit must be found in the verbal understanding between Mr. Dally and Mr. and Mrs. Potter before and at the time the latter took possession and deduced from the circumstances which follow such possession. It is fully established that they took possession of the three parcels of land, paid the tax thereon, worked the clay and sand banks according to their own judgment and pleasure, with-

out any accounting to Mr. Dally. The latter collected the rent for the tenement-houses. It is true that, at one period during their possession, Mr. Dally made known the fact that he was in need of some ready money, and asked for or claimed the right to sell a certain amount of clay or sand and to retain the proceeds, which was permitted. But this, under the circumstances, I make no account of, for I think, when the relation of the parties is considered, it should not at all influence the judgment of the court. They expended several hundred dollars in digging trenches and laying down pipe to drain the clay banks, and this was done with the full knowledge of Mr. Dally.

Do these facts, thus briefly outlined, constitute a defence which equity should recognize? And this leads to the inquiry, under what right or color of right, known to the law, did Mr. and Mrs. Potter enter into the possession? I think, under a mere license—nothing more. When the statute of frauds and perjuries is considered, they had no title or interest in these lands which would have enabled them to resist the claim of Mr. Dally for the possession of them before he became a lunatic or the claim of his guardian since that event.

Upon the argument it was urged that the facts in this case prove that the relation of landlord and tenant existed, and that consequently the defendants were entitled to notice to quit if nothing more. This view is incompatible with the doctrine of license. There is nothing in the whole case which shows that the defendants were to render anything whatsoever to Mr. Dally for the use or possession of these lands, and unless there is a contract, expressed or implied, that rent or something of value shall be given for the use and possession, the relation of landlord and tenant does not exist. It is not necessary that there should be an express agreement to that effect, but the court must find from the circumstances of the case that there is a fair implication to that end. It would be very absurd in this case to charge the defendants or either of them with rent, when it is apparent that Mr. Dally never contemplated receiving any nor the defendants giving any. In *Brewer* v. *Conover, 3 Harr. 214,* it was said: " No action can be maintained for use and occupa-

tion where the relation of landlord and tenant does not exist. And that relation does not exist where the defendant enters upon land under a contract of purchase and sale or for a deed." If this be the fair and just conclusion where the vendee is in possession under a written contract of purchase, clearly much more so where the defendant is in possession under a parol gift of the title.

In *Den, Richman* v. *Baldwin, 1 Zab. 395,* it was held that "no title passes under a parol license, and it is no defence in ejectment."

In *Hetfield* v. *Central Railroad Co., 5 Dutch. 571,* the court said : "A license to enter upon land, not coupled with an interest in the premises, may be revoked at the will of the party granting it. The right to come upon land of another and remain for an indefinite time can be granted only by deed ; and where the license is by parol it may be revoked at any time, even if money be paid for it and expense incurred in erecting buildings or other permanent improvements on the premises. Where the charter of a railroad company provides that the company may obtain land by consent of the owner, it means a legal consent ; and they can only obtain it in such manner as existing laws provide for acquiring title to or the right to occupy real estate. Such a clause in the railroad charter does not affect the statute of frauds." And see *2 Am. Lead. Cas. 575 ; Miller* v. *Auburn Railroad Co., 6 Hill 61 ; Selden* v. *The Delaware and Hudson Canal Co., 29 N. Y. 639.*

In *Silsby* v. *Trotter, 2 Stew. Eq. 228,* the court said : "A contract simply giving a right to take ore from a mine, no interest or estate being granted, merely confers a license. Under such license the licensee acquires no right to the ore until he separates it from the freehold." To the same effect is the case of *East Jersey Iron Co.* v. *Wright, 5 Stew. Eq. 248,* in which it is added : "A licensee has an authority to go upon the lands of the licensor and do any act or series of acts there, but possesses no estate or interest in the land."

These views are fully sustained by the case of *Lawrence* v. *Springer, 4 Dick. Ch. Rep. 289.*

Berry *v.* Potter.

I conclude, therefore, that the defendants were licensees and in no sense tenants. It was not disputed upon the argument but that the general doctrine is that a license to enter upon the lands of another may be revoked at any time. It was, however, urged that circumstances may arise which will render it inequitable for the licensor to exercise the privilege which he otherwise enjoys, and that such circumstances exist in this case. That there may be exceptions is very clear from the case of *Silsby* v. *Trotter, supra,* and *East Jersey Iron Co.* v. *Wright, supra.* From these causes it would appear that the licensee may indulge in such expenses and thereby make such improvements or additions to the premises as to justify a court of equity in protecting him against a revocation. But no fact has been presented out of which any such equity can be said to have arisen. The defendants went into possession of these valuable clay banks and worked them solely in their own interests. The trenches which they dug and in which they laid drain-pipe for carrying off the water, were dug that they might mine the clay more readily. They did this because it was less expensive than disposing of the water by machinery.

But it was urged if this should be found to be nothing more than a license which might be revoked by Mr. Dally before he became a lunatic, that right was not transmitted to his legal personal representative, the complainant. It was declared in *East Jersey Iron Co.* v. *Wright, supra,* that "unless coupled with an interest, or an equity has been created by acts done in pursuance of a license, a license is always subject to revocation in either of the following methods: *First,* by the will of the licensor; *second,* by the death of either of the parties; and *third,* by a conveyance of the land upon which it was intended to operate." Evidently, the principle which controls in the cases given is that, whenever the will of the licensor can no longer act with respect to the license or the thing upon which, or in reference to which, the supposed license applies, the license is necessarily revoked. *2 Am. Lead. Cas. 549; Hunt* v. *Rousmanier, 8 Wheat. 174, 201.* This result follows as well when the licensor becomes a lunatic as when dead, or when he has disposed of the

Trenton v. McQuade.

property by will or by conveyance. In *Matthiessen* v. *Mc-Mahon's Administrator, 9 Vr. 537,* the court declared : " The after-occurring insanity of a principal operates, *per se,* as a revocation or suspension of the powers of his agent, except in all cases where a consideration has been previously advanced in the transaction, so that the power became coupled with an interest, or where a consideration of value is given by a third person, dealing with the agent, relying on his apparent authority, in ignorance of the principal's incapacity."

This case was followed and approved by Vice-Chancellor Van Fleet in *Hill* v. *Day, 7 Stew. Eq. 150, 157.* In *Chew* v. *The Bank of Baltimore, 14 Md. 299,* it was held that a power of attorney might be avoided by the insane person and his committee, upon proceedings in equity instituted for that purpose. See *Bus. Ins.* § *304 ; Hazelton* v. *Putnam, 3 Pinn. 107, 3 Chand. 117 ; Vandenburgh* v. *Van Bergen, 13 Johns. 212 ; Prince* v. *Case, 10 Conn. 375 ; 2 Am. Lead. Cas. 549, 550, 553, 586.*

It follows that Mr. Potter should not only he enjoined from further working said clay banks, but that he must account for the rents and profits, or the use of said banks, from the time when the insanity of Mr. Dally became known to him. As there is no clear proof that such insanity was marked or pronounced so as to be clearly manifest to the common understanding, before the date of the return of the inquisition, I think he should not be required to account before that date.

I will advise a decree in accordance with these views.