DIVER, Respondent, vs. DIVER, Appellant.

*November 7—December 3, 1940.*

For the appellant there were briefs by *Fisher, Cashin & Reinholdt* of Stevens Point, and oral argument by *W. E. Fisher.*

*Royal M. Galvin* of Stevens Point, for the respondent.

WICKHEM, J.    This case presents the question whether plaintiff, who erected certain structures and other improvements upon the land of defendant and who is now out of possession, is entitled to have restitution for the amount by which the value of the land was appreciated due to the improvements, together with a lien to secure it, or whether his rights are limited to the lien or nonexistent.

Plaintiff is a son of defendant.  Defendant owned a corner lot in Stevens Point well located for a gasoline filling station.  At plaintiff's suggestion, and with the understanding that plaintiff was to pay for the improvements, defendant

permitted plaintiff to build a filling station on these premises. Construction of this station started about May 1, 1926, and was completed August 17th of the same year. The construction of the filling station on the corner required that defendant's combination residence and store building be moved to another portion of the lot. Of the initial cost of the station plaintiff paid $679.27. In the latter part of 1926 and early part of 1927, defendant had to pay $1,900 to save the property from foreclosure of mechanics' liens. She borrowed $2,000 to pay these construction bills. Plaintiff operated the station from August 17, 1926, to March 15, 1927. By this time he had exhausted his credit for the purchase of gasoline because he had devoted too large a percentage of the gross income to making payments upon the construction bills. Thereafter, one Delzell, a wholesaler with whom plaintiff dealt, rented the station for one year and hired plaintiff to operate it. At the end of a year a new arrangement was made whereby plaintiff operated the station on a commission, the commission being three to three and one-half cents per gallon as against a customary commission in the trade of two and one-half cents. The wholesaler stated that the extra commission was due to the fact that plaintiff had "a lot to do with the making of the lease and was given extra commission as part of the rent." This arrangement went on until 1938, at which time Delzell refused to renew the lease if plaintiff were to remain in charge of the station. Plaintiff then left the premises. During all of the time from 1926 to 1938 defendant furnished plaintiff board, room, and laundry, found by the referee to be worth $4 a week if furnished to plaintiff and $6 a week if furnished to a stranger. Defendant claims that she furnished this board and room so that plaintiff could get back what he had expended in the construction of the station. From 1927 to 1938, the period during which the premises were

leased to Delzell, the rental received by plaintiff was $75 per month. From and after February 25, 1933, defendant was sole lessor. Prior to that time plaintiff and defendant had joined in the lease. Plaintiff asked recovery to compensate him for value of improvements made by him upon the premises and for such lien as would properly secure this judgment. He claimed the measure of recovery to be the difference between the value of the premises before the improvements were made and the value as of March 15, 1938, and his witnesses placed this amount at approximately $4,000. Plaintiff also claimed that he had expended in work, labor, and materials on the improvements a total of $3,876.14. Defendant denied all liability and claimed that if there was any liability in restitution it was limited to the actual amount expended in permanent improvements. The referee found that during all the period involved plaintiff and defendant resided together, that plaintiff was furnished board, room, and laundry without charge by defendant, and that these services were of the value of $4 per week. The referee further found that these services were furnished without any agreement and without any expectation by defendant that they would be paid for. The referee further found that at different times during the period plaintiff paid certain bills and debts of defendant, and that he also purchased an automobile for defendant, expending the sum of $750, but that these were not made with any expectation by plaintiff of payment or repayment, and that more than six years had elapsed between the last of these and the commencement of this action. The referee disallowed all the items heretofore discussed. The referee further found that plaintiff had proposed to defendant that he be permitted to erect a filling station upon defendant's property at his own expense, and that defendant had acquiesced to this proposal; that by reason of the construction of this building

defendant's property increased in value from March 15, 1927, to 1938; that defendant received during that period a rental of $75 per month; that plaintiff operated the station during that period and received large sums in compensation therefor, and that this compensation was higher because of his relation to the property than it would otherwise have been; that the termination of plaintiff's connection with the premises and the consequent refusal of Delzell to lease the premises if he continued were due to plaintiff's own misconduct. With reference to the improvements the referee found the following: Plaintiff was entitled to recover, (1) initial expenditures of $979.27, less $300 which defendant was required to pay to Delzell by reason of failure of plaintiff to pay his gasoline bills; (2) for sums expended in laying sidewalks, gutters, and approaches in 1928 amounting to $255; (3) for sums expended for new construction in 1929 and 1930, amounting to $429.77; (4) for work and labor personally performed by plaintiff on the premises during the period from May 12, 1926, to May 19, 1931, amounting to $241.90. These sums, totaling $1,605.04, were found to be due and owing to plaintiff, and he was found to be entitled to a judgment and a lien.

The referee properly eliminated items for board, room, and laundry furnished by defendant, the automobile furnished by plaintiff to defendant, and other earlier items paid by plaintiff, none of which were done with any agreement for or expectation of pay. The question, therefore, centers about items going into the construction of the oil station and constituting improvements to defendant's land.

In disposing of these, it may be useful at the outset to state what in our opinion is not involved upon the facts in this case. There is no evidence of any contract between plaintiff and defendant concerning the erection of the filling station or defining the rights and obligations of the parties

arising out of this construction. Plaintiff requested and defendant granted permission to plaintiff to erect this structure at his own expense. Defendant's motive was to give plaintiff a location for his business, but she never agreed that he was to have possession for any particular period. He did not build the station under any misapprehension as to his relation to the title or with any purpose to hold adversely to defendant. He knew that she was the owner, and such possession or benefit as he might expect to have would arise out of the continuance of friendly relations between himself and his mother.

As in their relations prior to the building of the station, the business or legal aspects of the situation were neither considered nor integrated into any form of agreement designed to confer legal rights and obligations. The parties acted in this fashion throughout the period of their residence together until plaintiff by his conduct made continued friendly relations and residence together impracticable. The whole record demonstrates this conclusively. When plaintiff failed to pay the initial cost of the filling station, defendant borrowed $2,000 and discharged the claims of materialmen without making demands·of any sort on plaintiff. When plaintiff was in possession and conducting a business on the premises, he made improvements and performed work and labor without request by defendant and with no apparent expectation of payment, at least without any expectation communicated to defendant or to anybody else. Meantime, during all these years plaintiff enjoyed the opportunity of conducting his own business on the premises, and his assumed relation to defendant and the lease resulted in the paying to him of materially higher commissions in connection with his sales. When, after ten or eleven years, plaintiff and defendant came to the parting of the ways, and plaintiff sought a basis for recovering such value as he had

contributed to the premises through the improvements, it is not surprising that he, and subsequently the referee, trial court, and this court had great difficulty in making a satisfactory analysis of the situation. The difficulty arises out of the fact that during all the period the parties were in a domestic or family, rather than a business, relationship, and never dealt with each other as strangers or contractors. They mutually conferred and received benefits without any agreement and evidently on the theory that these mutual favors balanced each other. This is not the stuff out of which rights in restitution are created, and we think that no such rights accrued here in favor of either party.

The best case that can be made for plaintiff is that he was a licensee under a revocable license, and that as a condition to restoring possession to defendant a court of equity should require that the value of improvements made with the licensor's knowledge and consent be allowed to him. In this connection it is necessary to consider the doctrine of the case of *Hazelton v. Putnam,* 3 Pin. 107, 120. In that case the Putnams filed a bill in equity against Hazelton alleging that they owned a certain mill and water power, and that they had expended $2,500 in building the mill and improving the water power, the full and undisturbed enjoyment of which they had from 1841 to 1844; that they had a parol license from Hazelton giving them a privilege to flow his lands as an incident to operating the power plant; and that in 1844 Hazelton forbade the flowage of his lands and proposed to build a mill on his own. It was sought to enjoin Hazelton from interfering with the exercise of plaintiffs' license. It was held that plaintiffs were parol licensees; that while such a license remains executory, it may be revoked by the licensor at pleasure. It was stated, however, that,—

"In cases . . . where money has been expended, or improvements made in buildings erected on the faith of a parol

license which has been thus executed, courts of equity have generally interposed, at all events, so far as to restrain the licensee [licensor] from appropriating to his own use and benefit, the labor expended and improvements made on the faith of such license, without placing the licensee in the same situation in which he stood before he entered upon its execution."

In other words, the holding is simply to the effect that the revocation of a parol license may sometimes be restrained unless the licensor shall compensate the licensee for improvements made upon the land on the faith of the license. There being no effective remedy at law, equity will impose just conditions upon the revocation of such a license and will not permit the licensee to be dispossessed except upon the condition that the licensor deal justly with him in respect to expenditures for improvements. Plaintiff is not here seeking to hold possession of the premises against defendant unless and until she shall reimburse him. He has never claimed any right of possession as against defendant, and has left the premises. It is difficult to see in this case that there is anything to which a court of equity may attach a condition that payment for the improvement be made. Assuming that difficulty to be somehow overcome, the court would still have to determine whether it is unjust or inequitable for defendant to have possession of the premises without paying for the improvements. In considering this point we have somewhat the same difficulty that we experienced in finding a right of restitution in plaintiff. It is impossible to isolate plaintiff's activity in making improvements upon the land from the facts making up the rest of the parties' relationship, or, having done so, to find any basis for a finding that it is inequitable for defendant to keep the premises without so paying. The relationship during all the period involved was that of mother and son. It is a single relationship, and there are no facts that will warrant us in selecting portions

of the mutual acts of the parties and giving them separate prominence. Plaintiff lived at home, had free board, room, and laundry, and enjoyed the use of the improvements for years with special benefits arising out of his situation as a sort of licensee. Defendant's land was improved by some of plaintiff's activities, and she received a monthly rental. There was no contract or agreement as to any of the parties' relations. It is impossible for us to separate what the parties themselves never separated and to strike a balance that the parties themselves never attempted to strike. A conclusion that it is inequitable for the lessor to have possession without paying for the improvements can only be founded on speculation or guess, and a separation, for which we find no justification, of the various facts making up the relationship. We are of the view that plaintiff has shown no right to recover in restitution the value of the improvements, and that he is not entitled to a lien for much the same reason. Obviously, this is not a situation for the conditioning of relief to the defendant by the requirement that plaintiff be paid for his improvements, (1) for the same reasons that he is not entitled to a lien or to restitutionary rights, and (2) for the further reason that he has abandoned the premises, leaving behind him no cloud upon defendant's title, and defendant has no occasion to seek any relief which equity may so condition.

It is conceded that the so-called "betterment" statutes, secs. 275.24 and 275.29, are not involved here, and cases under these sections for obvious reasons are neither cited nor considered.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss plaintiff's complaint.