NEW YORK,
May, 1816.

VANDENBURGH
v.
VAN BERGEN.

## VANDENBURGH *against* VAN BERGEN.

A., in 1734, granted to B. a certain saw-mill, on the *Cocksackie creek*, with the ground and stream of water thereunto belonging; "And also the full liberty and license to erect and build another mill on any other place, at, or on, the same creek, with like liberty of ground and stream of water." Held that, though B., in his lifetime, would have had a right to have erected a mill on the creek, and to have *overflowed*, so far as was reasonable and necessary, the land of C., adjacent to the creek, and subsequently purchased of A.; yet that B. never having elected a place for another mill, or exercised his right to erect such other mill, during his lifetime, it became extinct at his death; and the right could not be claimed or exercised by his heirs or assigns: the privilege or election not being coupled with an interest, so as to vest absolutely, at the time of the grant.
The grant of an undivided moiety or share in a stream of water, does not authorize the grantee to appropriate or use the stream to the injury of others, jointly interested in it.
The property in a stream of water is indivisible.

THIS was an action on the case, for overflowing the plaintiff's land, by means of a mill-dam erected by the defendant across the *Cocksackie* creek. The cause was tried at the *Green* circuit, the 26th of *September*, 1815.

The plaintiff proved that he possessed a farm contiguous to the west bank of the *Cocksackie* creek, extending along the same one fourth of a mile, a considerable part of which, adjoining the creek, was low land. That, in 1810, the defendant erected, on his own land, about three fourths of a mile below the plaintiff's land, a saw-mill and dam on the creek, which he had ever since kept up; and that the creek, in consequence, when swelled by rain, overflowed several acres of the plaintiff's land.

The defendant, to show his right to erect the dam, gave in evidence, 1. The patent of *Cocksackie*, dated the 23d of *May*, 1687, to *John Brouck* and *Martin Garretse*, which included the plaintiff's farm and the place where the mill-dam was erected; 2. A deed, dated the 29th of *June*, 1734, from *John Brouck* to one of his sons, *Casparus Brouck*, for certain lands in the *Cocksackie* patent, not including the plaintiff's farm or premises overflowed; which contained the following clause: "Also, all my full share, right, and title of, in, and to a certain saw-mill, standing and being on the *Cocksackie* kill or creek, in the said county, with the ground and water stream of the said creek thereunto belonging; and *full liberty and license to erect and build another mill on any other place, at, or on, the same creek, with like liberty of ground and stream of water.*" Under the last part of this clause, the defendant claimed his right of erecting the dam in question.

*Casparus Brouck* died, leaving an only child, a daughter, who married *John H. Widbeck*. The defendant further gave in evidence, 3. A release from *John H. Widbeck* and his wife, dated the 16th of *February*, 1768, to *John V. Douw*, for land in *Cocksackie* patent, with the privilege of erecting a mill, &c., as in the former deed. 4. A release from *Douw* to *John H. Widbeck*, dated the 17th of *February*, 1768, for the same land, with the like clause, as to the privilege of erecting a mill-dam; 5. A

release from *Widbeck* and wife, dated the 14th of *April*, 1781, to
*Anthony Van Bergen* and *Henry Van Bergen*, which, after reci-
ting the deed from *Brouck* of the 29th of *June*, 1734, released
" all his right, title, interest, claim, and demand whatsoever, of,
in, and to a certain fall, situate, lying, and being in a tract of
land granted to *Martin Garritse* and *John Brouck*, in a certain
creek or kill, known by the name of the *Cocksackie* kill, and
privilege of erecting a mill thereon, with the ground and water
stream of the said kill, and, also, an acre of ground adjoining
the said fall." 6. A quit-claim, dated the 8th of *January*,
1725, from two of the sons of *Martin Garritse*, to their brother
*Petrus*, for all their right in the patent. 7. A release, dated the
20th of *October*, 1784, from *Henry* and *Peter Van Bergen*, two
sons of *Petrus Van Bergen*, and *Harmanus Cuyler*, and *Eliza-
beth*, his wife, the daughter of *Petrus*, to their brother *Anthony*,
for certain lands; and, also, of an undivided moiety of the fall,
&c., and an acre of land adjoining, described in the deed
from *Widbeck* and wife to *Anthony* and *Henry Van Bergen*.
8. Another deed from *Anthony Van Bergen*, *Peter Hermanus
Cuyler*, and wife, to *Henry Van Bergen*, dated the 20th of
*October*, 1784, for an undivided moiety of a certain mill,"
&c. " And, also, an undivided moiety or half part of, and
in, one other fall in the *Cocksackie* creek, and of, and in, the
one acre of land adjoining to the same fall, on the north side
of the kill," &c. " And, also, an undivided moiety or half part
of any mill or mills, which may hereafter be erected within the
limits of lot No. 19., on or near the uppermost fall in the kill,
and of an acre and a half of land contiguous to the said mill
or mills, with liberty of passing," &c.

9. The will of *Anthony Van Bergen*, dated *February* 10th,
1792, devising to his son *Peter*, among other things, " All the
privilege and other liberties I am lawfully entitled to, of, and in,
the *Cocksackie* mill rights," &c., in fee.

It was admitted, that *Peter*, the devisee, was dead, and that
the defendant was his son and heir at law.

10. A deed from *Henry Van Bergen* and wife, to the defend-
ant, dated 8th *December*, 1808, for three parcels of land on the
southerly side of *Cocksackie* creek, describing them, " and the
privilege of the water of the same creek, and the land thereby
covered, and also the free use of any mill, or mills, which might
thereafter be erected," &c.

NEWYORK,
May, 1816.

VANDENBURGH
v.
VAN BERGEN.

The plaintiff proved an uninterrupted possession of his farm for above 60 years, under *Mantie Brouck*, daughter of *John Brouck*, one of the patentees. It was also proved, that no dam, or mill, had ever been erected on the fall where the dam erected by the defendant is built, until the one made by him, and that the saw-mill, referred to in the different deeds, was situated lower down the creek.

The jury found a verdict for the plaintiff for 120 dollars damages, subject, by consent, to the opinion of the court, on the question of the right of the defendant to overflow the land of the plaintiff.

*Bronk*, for the plaintiff, contended, that the clause in the deed of the 29th of *July*, 1734, amounted to no more than a bare license to erect a mill, and was, in its nature, revocable, and had been revoked by the death of the grantor.

The farm claimed under *J. Brouck*, was sold or disposed of by him; for the possession of *M. Brouck* had been long enough to authorize the presumption of a grant. The license, therefore, was determined by the sale of the land.*

Again, this right, or license, was an incorporeal hereditament;† and no place was designated by the grantor, in which it was to be exercised. Unless, then, *Casparus Brouck*, in his lifetime, elected a place on which to erect the mill and dam, or to exercise the right, it was gone for ever at his death.

But, admitting that this privilege could descend, or be transferred with the land, it gave no right to overflow the plaintiff's land. It is evident, that the grantor intended that *C. Brouck* should elect a place where he might erect a mill, without injury to others; there were several mill-seats on the stream; it could not be intended that he should have the control of the whole, or might overflow all the adjacent land.

The deed to *H. B.*, of the 20th of *October*, 1784, contains several restrictions. The right is limited to the erection of one mill, and in a particular place.

Again, the defendant derived no title to this fall through *Casparus Brouck*. A place was selected for a mill, by *Widbeck*, in his lifetime, and the election of the mill-seat being once made, is final and conclusive.

In *Thompson* v. *Gregory*,‡ the court held, that where a grant of land contained a reservation of a right to erect mills on the

* 5 *Com. Dig.* 306. *Plead.* (3 *M.* 35.)

† 4 *Johns. Rep.* 81.

‡ 4 *Johns. Rep.* 81.

premises, and to overflow as much of the land as might be necessary for the mill; the right, until it was exercised, was to be considered as an *exception*, and void for uncertainty. No estate in fee, in the mill-seat, was granted, because no place was designated. And, where nothing passes to a grantee before election, there the election must be made in the lifetime of the parties.*

Again, admitting the right to have originally existed, yet, a release, or extinguishment of it is to be presumed from the long and uninterrupted possession, without any claim or exercise of the right.†

*Van Vechten*, contra, contended, that the right of erecting a mill, or mills, on the premises, was connected with the freehold granted. The grant operated as well on the mill-seat, or ground on which the mill was to be erected, as on any other part of the premises conveyed. Every grant is to be construed according to the subject matter and intent of the parties. That is certain, which may be made certain by the election of the party capable of enjoying the right.

But, it is said, that the right of election was lost by the death of the grantee. But there is a distinction; as where the interest vests immediately by the grant, there the election may be made by the heir or executor of the grantee.‡

As to the doctrine of presumptions: The court must look at the right as it is, and the principle on which the doctrine of presumption rests. It is founded on the supposed acquiescence of a party in the usurpation of another, for a certain length of time. The possession from which the presumption arises, is in collision with the right. There must be an acquiescence in acts done in hostility to the right, to afford the legal presumption of a release or extinguishment of it. Here, nothing of that kind is pretended or shown. The situation of the property, and the facts, do not afford any such presumption. The court, in *Thompson* v. *Gregory*, did not say, that such a grant would be inoperative and void.

But, it is said, the deed of *Casparus Brouck* gave no right to overflow the adjacent land. Where a thing is granted, every thing necessary to its enjoyment passes. If the right to erect a mill could be of no use without the privilege of overflowing

NEW-YORK,
May, 1816.

VANDENBURGH
v
VAN BERGEN.

* Co. Litt. 145.
a. Hob. 174.
Dyer, 281. Vin.
Abr Elect. (A)
pl. 1.

† 7 Johns. Rep.
556. 10 Johns.
Rep. 301. 377.

‡ Co. Litt. 145.
a. Com. Dig..
Elect. (B.)

NEWYORK,
May, 1816.

VANDENBURGH
v.
VAN BERGEN.
* Shep. Touch.
c. 5. s. 1, 2. p.
89, 90, 91. notes
1, 2, 3, 4.

the land, it must be considered that this privilege was intended to be given.*

Van Dyck, in reply, was stopped by the court.

PLATT, J. delivered the opinion of the court. This is an action on the case for overflowing the plaintiff's land, by means of a mill-dam erected by the defendant on the *Cocksackie* creek.

The defendant claims a right to maintain the dam, and to do the acts complained of, partly under a conveyance, in fee simple, from *John Brouck* (one of the patentees) to *Casparus Brouck*, dated the 29th of *June*, 1734, for an undivided moiety; and partly under a conveyance, in fee simple, from *Henry Van Bergen* and others to *Anthony Van Bergen*, dated the 20th of *October*, 1784, for the other undivided moiety.

The first deed conveys a saw-mill on the *Cocksackie* creek, " with the ground and water stream thereto belonging," " *and full liberty and license to erect and build another mill on any other place at, or on, the same creek, with like liberty of ground and stream of water.*" The latter of said deeds conveys (referring to another deed) " an undivided moiety of, in, and to, a certain fall, situate, lying, and being in a tract of land granted to *Martin Garritse* and *John Brouck*, in a certain creek or kill, known by the name of the *Cocksackie* kill, *and privilege of erecting a mill thereon, with the ground and water stream of the said kill; and, also, one acre of ground adjoining said fall.*"

The defendant deduces all the interest and estate granted by the said deeds, by a chain of conveyances down to himself; and it appears that about 4 or 5 years ago he erected the mill-dam, now complained of, upon his own land, at a fall on said creek where no mill or dam had ever before been built.

The plaintiff proves a continued and uninterrupted possession of his farm for the last 60 years, derived from *Mantie Brouck*, a daughter of the patentee.

I am of opinion that the defendant has failed in his attempt to show a right to overflow the plaintiff's land.

The deed from the *Van Bergens* (dated the 20th of *October*, 1784,) for their moiety, does not, in the terms of it, profess to grant any privilege in the water *beyond the limits* of the mill-site, or falls, intended to be conveyed by that deed. The right of building a dam at that place must be exercised in such a man-

ner as not to injure the previous rights of other persons. Besides, the grant of an *undivided share* in a stream of water would not authorize the grantee to appropriate or modify the stream to the injury of others, who have a joint interest in it. The property in a stream of water is *indivisible.* The joint proprietors must use it as an entire stream, in its natural channel. A severance would destroy the rights of all.

As to the right claimed under the deed to *Casparus Brouck,* in 1734, it was a "liberty and license" to erect a mill on any part of the creek, and to use and convert the stream of water in a reasonable manner for that purpose; and it does not appear that the present dam is unreasonably high, or unusually constructed.

*Casparus Brouck* himself would, undoubtedly, have had a right to do the very act now complained of, against any person claiming title under a subsequent conveyance from *John Brouck.* The question, therefore, is, whether the privilege granted, or the license given, by the deed to *Casparus Brouck,* has expired or been extinguished. According to *Co. Litt.* 145. A., and *Vin.* tit. *Election,* (*Com. Dig.* tit. *Election,*) " where an interest vests immediately by the grant, election may be made by the heirs," &c. So, " where an election is coupled with an interest, such election is descendible." But, " if nothing passed or vested in the grantee before his election, it ought to be made in the life of the parties." " When *election* creates the interest, nothing passes till election." " A feoffment of a house and 17 acres of land, parcel of a waste, the *feoffee,* and not his heirs, must elect, or else the grant is void."

Tested by these rules, I am clearly of opinion, that the grant or license to build a mill anywhere on the *Cocksackie* creek, with the land and water necessary for that object, vested no interest or estate absolutely in the grantee, at the time of executing the deed. The right was *potential* merely; it could vest only upon the location and election to be made by the grantee. It appears there were, at least, four mill-sites on that creek. It is certain that *Casparus Brouck,* in his lifetime, was not actually vested with the title to any particular mill-site, by virtue of that general grant. His election and location was necessary to consummate the title. He never exercised his right; and by his death it became extinct.

NEWYORK,
May, 1816.

The *election*, in this case, was not " coupled with an interest," in the sense of Lord *Coke*. He means an *election* coupled with an *interest which vests absolutely at the time of the grant*. As if there had been a grant of a definite mill-site coupled with the privilege of flowing. Then the interest in the principal subject of the grant would have vested immediately; and the appurtenant right of flowing would have followed it to the heir, who might elect to exercise the privilege of flowing whenever he pleased. The plaintiff is entitled to judgment.

Judgment for the plaintiff.