JOSHUA JORDAN *versus* JOHN G. MAYO *& al.*

When hydraulic works are erected on both banks of a private stream, if there is not sufficient water to afford a full supply for all, each riparian proprietor is entitled to an undivided half, or other proportion, of the whole bulk of the stream.

The owner of the entire water power on the falls of a river not navigable, with the dam across the same, and the different erections dependent thereon, having conveyed certain portions of the premises, to wit, the carding and clothing building, and a tract of land upon which the same stood, " with the privilege of drawing water from the flume connected with said building, sufficient for all the purposes of clothing and carding, and when there shall not be sufficient water for all the mills erected or to be erected on said flume and privilege, the said clothing and carding privilege is in all cases to have the preference;" it was *held*, that neither the owner, nor any person claiming under him by subsequent grant, could, by virtue of ownership of the shore opposite the premises first granted, draw off the water so that there should not be sufficient to meet the purposes of the grant. — *Held*, also, that the words in the grant, " erected on said flume and privilege," did not restrain those of the preceding clause, so as to enable the grantor, or his assigns, to draw as much water for the mills on the other side of the stream, and not through the same flume, as they might choose.

The grant by the owner of the whole stream of water sufficient for a given purpose, precludes the grantor and his assigns from diminishing or defeating in any way what he has thus conveyed.

ON REPORT from *Nisi Prius*, CUTTING, J., presiding.

This was an action of the case for using the waters of the Piscataquis river to the prejudice of the plaintiff and for diverting the same.

The plaintiff and defendant claimed through mesne conveyances, under the same grantor, the plaintiff's deed being prior to that of the defendant's.

The plaintiff claimed the right to so much of the water of the river as was necessary to carry his machinery; and the question was, whether his deed was to be so construed as to give him such right.

The clauses of the plaintiff's deed, upon the construction of which the case turned, are given in the opinion of the Court.

The "flume," mentioned in the deed to the plaintiff, was upon the easterly side of the river, while the diversion complained of was upon the westerly side.

It was agreed, that if, upon the testimony legally admissible, the action was, in the opinion of the Court, maintainable, defendant was to be defaulted, and damages assessed by referees to be agreed upon by the parties or appointed by the Court; if not, the plaintiff was to become nonsuit. The Court was authorized to draw such inferences as a jury might.

*A. Sanborn,* for defendant, elaborately argued the following points: —

1. The language of the deed under which the plaintiff claims clearly limits the preference which was to be given for "clothing and carding," to the erections on the "privilege" made by the canal on the easterly side of the river.

2. If it is urged that the plaintiff had the right to draw water from the "flume," sufficient for the purpose of clothing and carding; I reply that this general grant is limited and restrained by the restrictive clause that follows, to wit: "and when there shall not be water sufficient for all the mills, &c., *on said flume or privilege,* the said clothing and carding mill is to have the preference."

It is thus limited and restrained to such use of the water on the east side, coming through the canal and flume as they then existed, with no right to interfere with the use of the water for the saw and grist-mill on the west side in quantity and manner as it was then drawn.

3. The consideration paid for the demandant's privilege was small and it cannot be supposed that it was the intention of the grantor, for a trivial sum, to give a preference to the carding and clothing mill over his own grist and saw-mill upon the other side of the river, of far greater value and income. He intended it to apply only to the privilege on the easterly side.

4. The defendant has not violated the rights of the plaintiff in the use of the water. The testimony shows that he has used only one-fifth of the proportion to which he is entitled.

5. Has he been guilty of diverting the water from the Piscataquis river, or rather from the millpond made by the dam across it, to the injury of the plaintiff? He now takes the water directly from the pond through a part of the main dam by means of a canal, which is no diversion. In order to divert the water, he must take it outside and beyond the dam and not return it again to the pond. He has done nothing at all like this. Ang. on Wat. Cour. 97 to 106; *Blanchard* v. *Baker*, 8 Greenl. 253; *Webb* v. *Portland Manf. Co.* 2 Sumner's C. C. R., 18, and cases there cited.

*Robinson*, for plaintiff, presented the following among the the points of his argument: —

1. The testimony shows that the defendant drew water from the common reservoir, when there was not sufficient for the operation of the mills of both parties to this suit.

2. Both parties claim under the same grantor, but plaintiff's deed is prior in point of time to defendant's.

The plaintiff insists that a fair construction of the language of the deed to him and to those under whom he claims, to wit, the words, " for the purpose of carding and clothing," gives to the plaintiff rights to the water power in controversy,

superior to any and all subsequent grantees of the common grantor.

3. Both by language employed in the plaintiff's deed and by contemporaneous facts, the water power in question was treated by the grantor and grantee as a *unit, an entirety,* so that when the plaintiff and his grantors had the right (prior to all others) to draw water from the flume for the purposes named in the deed, this right extended to the whole of the common fountain, the feeder of the flume, and was of necessity an indivisible right. *Blanchard* v. *Baker,* 8 Greenl. 253, 270.

4. The first clause in plaintiff's deed is general, unrestricted, and ample for all the purposes claimed by plaintiff. These general words are not to be restrained by restrictive words added, when such words do not clearly indicate the intention, and designate the grant. 21 Greenl. 69.

5. In construing deeds, the grant shall be taken most forcibly against the grantor. 21 Greenl. 69.

The words in the latter part of the clause in the deed, which are thought by the defendant to be restrictive, are rather to be considered words of enlargement.

6. The word "privilege," used in connection with flume in the clause under consideration, extended to the whole power of the stream. The word is defined in Webster as " a water-fall in streams sufficient to raise water for driving water wheels." If there was more than one flume, that word would be restrictive. Privilege means, however, the whole fall.

7. Bradbury, the common grantor, could not divert water from our flume to our prejudice, because that would be taking from us the means requisite to the enjoyment of his grant to us. The defendants are in his place. They cannot, by construction, nullify their own grant. *Hathorn* v. *Stinson,* 1 Fairf. 224; *Elliot* v. *Sheppard,* 25 Maine, 371; 35 Maine, 65; 17 Maine, 169, 281; 38 Maine, 90.

APPLETON, J.— On August 20, 1832, John Bradbury, having by various deeds acquired the title to so much of lot No. 11,

range 1st, as embraced both shores and the entire water power on the falls in Piscataquis river, in Foxcroft, and the dams across the river, and the different erections dependent thereupon, in consideration of one thousand dollars, paid by Stephen P. Brown, and an agreement on his part " to pay one-eighth part of all the expenses of supporting and maintaining the dam across the Piscataquis river, immediately above the bridge, and one-sixth part of the expense of supporting and maintaining the dam at the said mill, now owned by me, (said Bradbury,) immediately below," conveyed to him " the carding and clothing building, in the town of Foxcroft aforesaid," and a certain tract of land upon which the same stood, &c., &c., " with the privilege of drawing water from the flume now connected with said building *sufficient* for all the purposes of clothing and carding, and when there shall not be sufficient water for all the mills erected on said flume and privilege, the said clothing and carding privilege is in all cases to have the preference," &c.

This was the first conveyance made by Bradbury, after the title to the entire privilege and the land on both sides had become vested in him. The terms of this deed are first to be satisfied. The grantee therein is to be protected without limitation or restriction, in the rights acquired. What those rights may be, is to be ascertained from the language of the deed by which they are conferred. It is immaterial from what sources the title of Bradbury was acquired. Having acquired the whole, he might make such a disposition of the whole estate or any portion of the same, as he should deem advisable.

Neither is it material to examine the subsequent grants, by which Bradbury ultimately became entirely divested of his whole estate in lot No. 11. The remainder, after Brown's deed was fully satisfied, could only be conveyed. If the deeds purport to convey more, they would be ineffectual. The rights of Brown are neither increased nor diminished by the subsequent conveyances of Bradbury.

The plaintiff, by various mesne conveyances, has acquired

the title of Brown. The defendants may be regarded as representing the remaining interest of Bradbury. The rights of the parties to this controversy will be readily perceived, by regarding it as one between the original parties to the conveyance from Bradbury to Brown, and ascertaining what were their respective rights by virtue thereof.

In the construction of a deed, it is a general rule that its language should be taken most strongly against the grantor, and most beneficially to the grantee.

" When hydraulic works are erected on both banks of a private stream," says WALWORTH, Ch., in *Arthur* v. *Case*, 1 Paige's Ch. 447, " if there is not sufficient water to afford a full supply for all, the owner on each side is entitled to an equal share of the water." Each riparian owner is entitled not only to half or other proportion of the water, but to the whole bulk of the stream, undivided and indivisible, or *per my et per tout.* Ang. on Wat. Courses, § 100 ; *Vanderburg* v. *Vanbergen,* 13 Johns. 212. Such is the law when the opposite shores have different owners ; but, in the case before us, at the date of the conveyance under consideration, they had both become vested in the same individual. No conflict of right between different shore owners can arise. The question is, what the owner of both shores and the entire water privilege, intended to convey by the words of his grant.

Brown, by his conveyance, acquired certain premises and the buildings thereon, " with the privilege of drawing water from the flume now connected with said building, *sufficient for all the purposes* of clothing and carding." These words are plain. The water is to be drawn from the flume. The grant is of water " *sufficient for all the purposes* of clothing and carding." It contains no limitations or restrictions. The grantor, by virtue of his ownership of the opposite shore, could not draw off the water so that there should not be a sufficiency of water to meet the purposes of the grant. If he could rightfully so do, he might defeat his grant. But that he cannot be permitted to do.

The next words in the deed from Bradbury are these,

" and when there shall not be sufficient water for all the mills and machinery erected, or to be erected on said flume and privilege, the said clothing and carding privilege *is in all cases* to have the preference." It is insisted that these restrain those of the preceding clause; that the precedence is limited to that over the machinery on the same flume, and that the grantee might draw as much water for the mills on the other side of the stream, as he might choose. The general grant is of a sufficiency for certain purposes. That sufficiency is in no way to be diminished or made an insufficiency. By the preceding clause, Brown was to have a sufficiency. By the one under consideration, his rights were made prior to all having machinery upon the same flume. These rights are not in conflict, nor are they to be impaired by the grantor.

" Suppose a man," remarks SHAW, C. J., in *Dryden* v. *Jepherson,* 18 Pick. 392, " owning land on both sides of a stream, (not navigable,) should grant to another the land on one side, bounded by the thread of the stream, and should, at the same time, grant a right for a mill on his own land, with a dam of sufficient height to raise the water to drive such mill. As such dam could not raise the water, without being extended across the river, and of course one half upon the grantor's land, such a grant would, by necessary implication, carry the right to build on the grantor's own land, and to occupy it as far as necessary to maintain the dam, so long as the dam should be kept up." So, in the present case, the grant of water " sufficient for all the purposes of clothing and carding" precludes the grantor from diminishing or defeating what he has conveyed.

The plaintiff is entitled, by his grant, to water " sufficient for all the purposes of clothing and carding." The defendant has diverted the water, and has thereby deprived the plaintiff of his legal right to a sufficiency of water.

*Defendant defaulted.*

TENNEY, C. J., and HATHAWAY, GOODENOW, and MAY, J. J., concurred.