By the Court.
We are entirely satisfied with the result reached by the learned referee in this action, and in the main with the reasoning of the able opinion submitted by him in deciding the same.
We however, prefer to place our decision in affirming the judgment upon the ground, that the plaintiff was bound to assert, within a reasonable time whatever right he claimed to have" acquired under the agreement of June 13, 1864. And having practically failed to make any such assertion, by acts contemplated by such agreement, within a period of twenty years, he should be held to have abandoned all such right, and to have ceased to have any claim to the possession of the premises, or any interest therein. Especially so as the premises have been conveyed to other parties, and Erastus Spaulding with whom he contracted, is dead. The judgment and the order granting an additional allowance should be affirmed with costs.
McNaughton,Referee.
The pivotal question in this case is ■ Did the agreement of June 13. 1864, vest in the plaintiff the ores and minerals in that part of Spaulding’s farm called the sixteen acre lot?
If it did, then the defendant Bellinger and those claiming under and through him and operating the mine of pyrites there are trespassers, and accountable to plaintiff for damages he has sustained thereby. If not, the minerals went by conveyance and inheritance through intermediate parties and owners to Charles H. Austin, and his lease conveyed to Bellinger the right he, Bellinger, claims to have exercised under it, he and his lessees and their assigns.
To vest in one an unlimited right to the use and profit of a thing, is to vest the thing itself This is by operation of law, which annexes absolute ownership to usufruct, as affecting the intention of parties The intention is the crucial test
What was intended by that agreement? The parties to it stood in independent relations. The plaintiff had discovered iron pyrites on Spaulding’s farm, and sought to avail himself of profit from its development and the sale of the product of the ores there This he might do in several ways. He might purchase the mines and minerals outright, and so divest Spaulding and wife of every interest therein and of all concern as to results of attempted development. or he might acquire a right to go on the premises, to take out the ores there to be found, to work them, to market their products and to have a share of the proceeds of their sale
I am of opinion the agreement between plaintiff and Spaulding was intended to effectuate only the latter purpose; and this only on condition—a condition precedent
The agreement, for a consideration (the seal imports one) gives the plainliff right to enter upon the premises and “search for, excavate and carry away and test” portions of the minerals there found, and upon becoming convinced, after such test, that the mineral substances so tested are worth working, “then" the right accrues to him to excavate and take them away and cause them to be worked, etc. The language is clear and express—after making such examinations and tests, only “then” was he authorized “to dig, carry away, and cause to be worked such of the.substances there found.”
*491 Significance is attached, to this precedent condition by the fact that, notwithstanding the plaintiff had already prospected on the premises, had discovered iron pyrites and traced a vein of it there, the parties interpose it as something still to be done by the plaintiff, before the vesting of any rights connected with the premises or the ores or minerals there; and from the further fact that, from the fulfillment of this condition results the only security to Spaulding against damaging results to follow abortive and fruitless occupation of and excavations on his premises. Further significance is attached to it, too, by the fact that at the time of the agreement, the parties believed that ultimate rights of entry and excavation might extend to Spaulding’s entire farm. A personal trust is reposed in plaintiff, with the expectation of gain as an incentive to its faithful execution.
Sulphur is the valuable ingredient in iron pyri'es, and assay or analysis is necessary to determine its presence in remunerative quantities.
It is not pretended that plaintiff ever made this test. He expressly says he never removed any ore, and did nothing more than to look at such specimens as he found on the premises. As a consequence he was never qualified to exercise the option, the election, the agreement gave him—to go on after testing and finding pyrites in paying quantities, excavate, remove and cause it to be worked, etc. Further, he never, either by word or deed, exercised or assumed to exercise his election. And until election he had no rights incident to the development of the ores, removing them, working them, or in an manner handling them or disposing of their products. It is to keep in view that the agreement imposes no obligation whatever to exercise any rights it confers. The plaintiff might do, or refrain from doing, either as to testing, or, alter having successfully tested, might abandon all further action or purpose. His election would determine all.
It is true, as the evidence in the case discloses, that, at the time the agreement was made, a valuable mine of pyrites existed on the premises. It might be predicated, perhaps, with entire plausibility, that had the fact been known to, or believed by the parties, they would have dispensed with the preliminary “test” intended to develop the fact. Are we at liberty now to disregard it? I think not. By a course of reasoning, which in the nature of things must be necessarily speculative, to divine results as comprehensive as parties had in view, and disregard in their attainment, specific precedent conditions clearly expressed, would be beyond the province of judicature and violative of fundamental principles. The distinction is kept in view between investiture and forfeiture of rights. And even conceding that substantial performance satisfies c -nditions precedent, yet the plaintiff made no attempt at fulfillment
The plaintiff cites cases in our own and in the Pennsylvania courts to show the divisibility of estates as they relate to lands or minerals respectively, and in illustration of conveyances of absolute title and property as incident to the usufruct. Though his positions in these respects are indisputable, the cases may be referred to as valuable elucidation of the rules of construction.
In Caldwell v. Copeland, (37 Penn., 427), the grantee, in a conveyance under seal, claimed the fee in a coal mine under these words in a conveyance, “ also the full right, title and privilege of digging and taking away stone coal to any extent the said grantee may think proper to do or cause to be done," etc.
This was held to convey a fee in the mine, as being the intention of parties, and not merely an incorporeal hereditament or license to enter and take the coal. The ruling was approved by the same court in Caldwell v. Fulton (31 Penn., 478).
The language here which the court construed as expressing an intention to convey, is clear cut and as expressive as any terms that could be used, short of “ do sell or do convey ” They give absolute dominion over the property.
In Funk v. Huldeman (MSS.), the owner of a farm, in consideration of $200, granted the free and uninterrupted privilege to one, his heirs and assigns, to go upon it for prospecting, boring and taking any ore, oil, etc., out of the earth, the grantee agreeing to use all diligence in the.exercise of such rights and to give the grantor one-third of all taken out. It was contended that the grantee took a fee. The court held it a license, not a lease, an incorporeal hereditament, which’ is defined to be a right growing out of a thing corporate and no part of the thing; “ a right to experiment for oil and sever it from the premises and take it (on yielding a third to the landlord; as a chattel.” The court *492 further held the license to have become exclusive, such appearing to have been the intention and evidenced by the grantor’s standing quietly by while time, labor and money were expended on the faith of an exclusive right. And the court say: “ The grantor’s conduct in this regard might, with considerable reason, be treated as an eqitable estoppel, but, as bearing upon the construction of the instrument, it is expressly significant.” Throughout the opinion, the court treated oil as a mineral and classified the right to take it with the right to fire-bote, plow-bote or turves.
In Clement v. Youngman (40 Penn., 341), the grant was to one, his heirs and assigns, by writing under seal, of the exclusive right and privilege of searching for, digging, raising and carrying away * * * all the iron ore and lime-stone on the premises, also timber sufficient to enable the mines to be worked to advantage, etc., room on the land for houses and buildings necessary for iron works, etc; the grantee to pay 20 cents, per ton for ore. The grantee entered into possession and quarried stone but erected no iron-worKs. The action was ejectment by the grantor for a lime-stone quarry in the locus in quo.' The court held that the grantee acquired no immediate ownership in the subjects of the grant—none until iron works should be erected. “It is difficult” says the court, “ to read this agreement without the conviction that the motive for its execution, and the basis on which it rests, was the contemplated erections ■ * * * on the lands.” “ It is hard to give any reason for holding that a deed, which confers on the grantees every right over its subject which its owner can exercise, does not confer ownership. If, therefore, this were all that is to be found in the deed, this case would be ruled in their favor by Fulton v. Caldwell. But this is not all. To determine what the parties intended, etc., ‘the entire agreement must be considered.’ If the ores and lime-stone became vested immediately, the grantees, their heirs, and assigns, might hold them forever, without erecting any iron-works or makiug any compensation to the grantor.
The agreement of the 13th of June, 1864, does not, in any event, contemplate vesting in the plaintiff absolute dominion over the minerals; grant to him the full and unlimited use of the minerals with no limit to his right but his own will; give him the right to do what he likes with them—these are some of the postulates in the cases holding a grant of the usufruct a grant of the thing itself. The plaintiff is merely authorized, after testing, etc., “ to dig, carry away, and caused to be worked” such of the substances found; to sell the products thereof; to deduct from proceeds of sales the expenses, etc.; and then the balance is to be divided, the plaintiff to receive £ and Spaulding £; no rational construction can make of this language a grant of absolute dominion over the minerals, a right to do what plaintiff liked with them. He is limited by a special direction, for a specific purpose, and that not in his sole interest. Illustration is scarcely necessary to so plain an inference. Suppose however, the plaintiff should sell the minerals before or after excavation, or, in the exercise of absolute dominion, should dump them in the highway to improve its grade or condition; there could be no more flagrant violation of right.
Spaulding’s interest as owner, and the concern which naturally follows ownership, would pursue these minerals until they should be worked and then concern itself with their products, their sale and the division of the net proceeds. And this in an interest concerned, not merely, with knowing results by way of certitude as to an amount to be paid for ores, but concerned with all the economies of labor, management and production, as enhancing profits to be divided between the parties, all utterly inconsistent with surrender to plaintiff of absolute dominion over the minerals.
Neither is what Spaulding shall receive a payment in the ordinary sense of the term, as connected with bargains and sale. The plaintiff never agreed to pay Spaulding anything. Spaulding’s compensation for such ores as should be taken by plaintiff is not made to rest in plaintiff’s personal obligation, but only in the interest in the manufactured products of minerals, less expenses, which, the agreement says, shall be divided between the parties, and this interest is existent as well before as after the division.
The plaintiff invokes the recitation by Spaulding in Ms conveyance to Ms son Albert, excepting and reserving all mines and minerals as reserved in the fore going deeds and as conveyed by the party of the first part; as confirming his theory of an absolute grant. This deed was made more than ten years *493 after the agreement between plaintiff and Spaulding, and conceding that the words I have italicised had special reference to the agreement of June 13, 1864, it cannot be allowed to control or over-ride the plain interpretation of the agreement itself, nor could it, had it been contemporaneous with it. It would be properly inserted in due course as precautionary in connection with covenants in the deed.
Were plaintiff’s rights under the agreement, be they of whatever kind or nature, forfeited before this action? The defendants insist they were forfeited by non user-, that, no time being set in the agreement for their exercise, it must be within a reasonable time,and that by a delay of over twenty years (the plaintiff in the meantime standing by, seeing others carrying away the ores without . objection), was an abandonment, a forfeiture of every right given him by the agreement.
The fallacy of this argument is in its assumption that there was an agreement by the plaintiff to perform something, when in fact there was none.
Did the plaintiff forfeit the election the agreement gave him? is a more serious question. It is said in Co. Litt. 145, A. tit. Election, “When nothing passes to the feoffee or grantee before election to have one thing or another, there the election ought to be made in the life-time of the parties.” See, also (Comyns Digest, title Election), “ Where election creates the interest nothing passes until election,” this election not having been complied with an interest which vests at the time of the grant.
In Vanderberg v. Van Bergen (13 Johns. 212), this rule is asserted and is controling. It is, also, approved in Jackson, ex dem. etc., v. Van Buren (13 Johns., 525.) Erastus Spaulding, one of the parties to this agreement, died before this action.
Plaintiff never having acquired title to or possession in the ores, cannot in any view sustain the present action.